The DOW CHEMICAL COR-
PORATION, Defendant
Below, Appellant,

v.

Jose Rufino Canales BLANCO,
Plaintiff Below, Appellee.

Dole Food Company, Inc., Dole Fresh
Fruit Company, Standard Fruit Com-
pany, and Standard Fruit & Steam-
ship Company, Defendants Below, Ap-
pellants,

v.

Jose Rufino Canales Blanco, Plaintiff
Below, Appellee.

Nos. 492, 2012, 493, 2012.

Supreme Court of Delaware.

Submitted: April 10, 2013.
Decided: June 10, 2013.

Donald E. Reid, Esquire, of Morris, Nichols, Arsht & Tunnell LLP of Wilmington, Delaware, OF Counsel: Michael L. Brem (argued), Esquire, of Schirrmeister Diaz–Arrastia Brem LLP, of Houston, Texas for Appellant The Dow Chemical Company.

Somers S. Price, Jr., Esquire, and Daniel F. Wolcott, Jr., Esquire, of Potter Anderson & Carroon, LLP of Wilmington, Delaware, Of Counsel: Andrea E. Neumann, Esquire (argued), of Gibson, Dunn & Crutcher LLP, of New York, New York for Appellants Dole Food Company, Inc., Dole Fresh Fruit Company, Standard Fruit Company and Standard Fruit & Steamship Company.

Timothy Jay Houseal, Esquire, Jennifer M. Kinkus, Esquire, William E. Gamgort, Esquire, of Young Conaway Stargatt & Taylor, LLP, of Wilmington, Delaware, Of Counsel: D. Ferguson McNeil, III, Esquire of Houston, Texas for Defendant Occidental Chemical Corporation.

Michael L. Sensor, Esquire, of Perry & Sensor of Wilmington, Delaware, Of Counsel: Jonathan Massey, Esquire (argued), of Massey & Gail of Washington, District of Columbia for Appellee Jose Rufino Canales Blanco.

David W. deBruin, Esquire, of Bifferato LLC of Wilmington, Delaware, William W. Erhart, Esquire, of William W. Erhart, P.A. of Wilmington, Delaware, Christopher J. Curtain, Esquire of MacElree Harvey, Ltd., of Centerville, Delaware for amicus curiae Delaware Trial Lawyers Association.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice, for the majority:

■ In this interlocutory appeal from the Superior Court we answer a narrow certified question of law that is a matter of first impression. "Does Delaware recognize the concept of cross-jurisdictional tolling?" We answer this certified question in the affirmative. The Superior Court recognized the concept in this case. The Delaware Court of Chancery has previously recognized intra-jurisdictional tolling. The commencement of a class action against the defendants in this case, whether here or in another jurisdiction, puts the defendants on notice of the substance and nature of the claims against them. Accepting the rationale of the United States Supreme Court on class action tolling, we extend the class action tolling exception to cross-jurisdictional class actions and hold that class action members' individual claims are tolled while a putative class action on their behalf is pending. Until class action certification is denied, the individual claims remain tolled. Tolling applies whether the class action is brought in Delaware or in a foreign court. Accordingly, the certified question is answered in the affirmative.

### Facts and Procedural History

Jose Rufino Canales Blanco ("Blanco") worked as a laborer on a banana plantation in Costa Rica from 1979–1980. During this time, Blanco was allegedly exposed to the toxic pesticide dibromochloropane ("DBCP"). In 1993, Blanco entered a class action lawsuit in Texas against defendants. This lawsuit worked its way through various state and federal courts. Procedural hurdles and developing U.S. Supreme Court precedent delayed consideration of the case. After class certification was denied, Blanco filed an individual action in the Superior Court of Delaware, alleging the same injury as was alleged in the Texas class action.

The Defendants moved for judgment on the pleadings and in the alternative, moved to dismiss, citing the two-year statute of limitations under 10 *Del. C.* § 8119. Blanco contended that the putative Texas class action had tolled the statute of limitations. Recognizing that this issue was one of first impression, the Superior Court concluded that Delaware law recognizes the doctrine of cross-jurisdictional class action tolling.

The Superior Court thoroughly analyzed Delaware's statute of limitations and case law on intra-jurisdictional tolling,[1] and engaged in an expansive survey of other jurisdictions' decisions to adopt or not to adopt the doctrine of cross-jurisdictional tolling.[2] The court found cross-jurisdictional tolling applied, but appropriately

---

1. *Blanco v. AMVAC Chem. Corp.*, 2012 WL 3194412, *7–9 (Del.Super. Aug. 8, 2012).

2. *Id.* at *9–10.

limited its analysis to the facts of this case, concluding:

> This Court must tread lightly in recognizing any tolling exceptions to the General Assembly's duly-enacted and otherwise unambiguous statutes of limitation. The Court finds three factors especially compelling in its decision allowing tolling of the statute of limitations for plaintiff. First, all of the defendants to be bound by the ultimate decision in this case were clearly on notice of the action at the outset. Second, plaintiff can show actual reliance on the pending putative class and related individual actions in his decision to not file an individual action prior to denial of class certification. Third, defendants have caused a lot of the delay—upon which they now seek to rely—through their own procedural maneuvering and they may not take refuge behind it. Plaintiff here has tried to act continuously since the filing of the original [ ] action, and has been procedurally thwarted at every turn by defendants; the statute of limitations has, therefore, not run against him.[3]

Accordingly, the Superior Court denied the Defendants' motion to dismiss.

The Defendants applied for an interlocutory appeal of the Superior Court's opinion under Supreme Court Rule 42. The Superior Court granted the application for an interlocutory appeal presenting one narrow question: "Does Delaware recognize the concept of cross jurisdictional tolling?" That question does not implicate the factual determination of from when the statute of limitations was tolled in this case. The Superior Court denied certification of the Defendants' remaining questions for interlocutory appeal, including when tolling occurred in this case. This Court "concluded that, as to that portion of the appellant's application that was granted by the Superior Court, the appellant's application for interlocutory review meets the requirements of Rule 42 and, therefore, should be granted."[4]

### Discussion

This interlocutory appeal involves a question of law, which we review *de novo*.[5] Our inquiry is limited to the question certified: "Does Delaware recognize the concept of cross jurisdictional tolling?"

In *American Pipe & Construction Co. v. Utah*, the United States Supreme Court first announced the class action tolling exception.[6] In that case, the members of a putative class action sought intervention in an individual suit after the putative class was not certified.[7] The Court found that the relevant statute of limitations was tolled during the pendency of the class action suit, and therefore the members of the putative class were able to intervene in the individual suit.[8] That tolling doctrine was expanded in *Crown, Cork & Seal Co. v. Parker*,[9] where the Supreme Court applied the *American Pipe* tolling exception to the circumstance where members of the putative class filed individual suits rather

---

3. *Id.* at *13.

4. *Dow Chem. Corp. v. Canales Blanco*, Case No. 492, 2012 (Del. Sept. 20, 2012) (Order).

5. *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, 624 A.2d 1199, 1204 (Del.1993).

6. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

7. *Id.* at 552–54, 94 S.Ct. 756.

8. *Id.* at 561, 94 S.Ct. 756.

9. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983).

than seeking intervention. In both *American Pipe* and *Crown, Cork*, the second litigation and the original class action all occurred in the same jurisdiction. Thus, this tolling exception has been identified as the "intra jurisdictional tolling doctrine." The Court of Chancery has recognized the intra jurisdictional tolling doctrine of *American Pipe*.[10] In this interlocutory appeal we decide whether the *American Pipe* doctrine should be extended to the situation where the putative class action was brought in a foreign court.

In *American Pipe*, the Supreme Court stated broadly, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."[11] The Supreme Court considered two countervailing interests. First, the goal of class action procedures is "efficiency and economy of litigation."[12] Second, the goal of statutes of limitation is to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost memories faded and witnesses disappeared."[13]

Reading *American Pipe* too narrowly would defeat an important purpose of a class action, which is to promote judicial economy. Allowing cross-jurisdictional tolling recognizes and gives effect to the proposition that the policy considerations underlying our statute of limitations are met by the filing of a class action. Cross-jurisdictional tolling also discourages duplicative litigation of cases within the jurisdiction of our courts. If members of a putative class cannot rely on the class action tolling exception to toll the statute of limitations, they will be forced to file "placeholder" lawsuits to preserve their claims. This would result in wasteful and duplicative litigation.

■ We are persuaded by the reasoning of other state supreme courts that have recognized the doctrine of cross jurisdictional class action tolling. In *Stevens v. Novartis Pharmaceuticals Corp.*, individual members of a putative class action brought in a United States District Court in Tennessee later filed suit in Montana state court.[14] There the defendants argued that Montana should not recognize cross jurisdictional tolling. The Montana Supreme Court considered the trend among other jurisdictions:

The large majority of courts to consider the issue, however, have stopped short of outright adoption or rejection. While [the Defendant] claims that the doctrine has been "widely rejected," in reality the doctrine has seldom been squarely addressed, and it is clear that its outlines are still in the process of developing. Many of the cases [the Defendant] cites as "rejecting" the doctrine, for example, are merely circuit court decisions looking to existing state law, finding no au-

---

10. *See Dubroff v. Wren Holdings, LLC*, 2011 WL 5137175, at *13 (Del.Ch. Oct. 28, 2011) (*quoting Devlin v. Scardelletti*, 536 U.S. 1, 10, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002) ("A class action tolling rule makes sense. Without one, 'all class members would be forced to intervene to preserve their claims, and one of the major goals of class action litigation— to simplify litigation involving a large number of class members with similar claims—would be defeated.' Thus, the Court [of Chancery] acknowledges a class action tolling.")).

11. *American Pipe*, 414 U.S. at 554, 94 S.Ct. 756.

12. *Id.* at 553, 94 S.Ct. 756.

13. *Id.* at 554, 94 S.Ct. 756 (internal citation omitted).

14. *Stevens v. Novartis Pharm. Corp.*, 358 Mont. 474, 247 P.3d 244, 249 (2010).

thority one way or the other, and declining to decide the issue without guidance from the state's high court.[15]

The Montana Supreme Court justified its recognition of cross jurisdictional tolling, stating, "although avoiding the possibility of a rush of out-of-state plaintiffs filing in our court system is concededly a valid policy objective, we consider this objective less compelling than competing considerations." [16] The policy considerations underlying the statute of limitations had been satisfied because "the defendants are already on fair notice of the claims against them through a timely class action suit...." Because the defendants were fairly on notice, and because of the potential burden resulting from placeholder suits, the court recognized cross-jurisdictional tolling, stating, "We see no reason why jurisdictional boundaries should operate as a bar to the application of this policy." [17]

The Ohio Supreme Court adopted cross-jurisdictional tolling in *Vaccariello v. Smith & Nephew Richards, Inc.*[18] In *Vaccariello*, plaintiffs filed a class action suit in federal court in Pennsylvania.[19] Members of the putative class later filed suit in Ohio state court after their class was denied certification.[20] The Ohio Supreme Court found that regardless of where the class action was filed, "the defendant is put on notice of the substance and nature of the claims against it." [21] Thus, the Ohio Supreme Court found the dual interests of *American Pipe* also are applicable to cross-jurisdictional tolling. The Ohio Supreme Court noted that a failure to recognize cross-jurisdictional tolling would:

> [E]ncourage all potential plaintiffs in Ohio who might be part of a class that is seeking certification in a federal class action to file suit individually in Ohio courts to preserve their Ohio claims should the class certification be denied. The resulting multiplicity of filings would defeat the purpose of class actions.[22]

The Ohio Supreme Court discounted the argument that cross jurisdictional tolling would encourage forum shopping, explaining, "only those plaintiffs who could have otherwise filed suit in Ohio will be able to file suit pursuant to the tolling rule we espouse today." [23]

This Court recognized, in *Reid v. Spazio*, that the location of an original action should not be relevant to our statute of limitations tolling analysis.[24] In *Reid*, a Texas state court had previously dismissed a Delaware plaintiff's original suit for lack of personal jurisdiction.[25] The plaintiff argued that, although the statute of limitations had run, Delaware's Saving Statute preserved the claim.[26] We determined *en*

15. *Id.* at 253–254.

16. *Id.* at 256.

17. *Id.*

18. *Vaccariello v. Smith & Nephew Richards, Inc.*, 94 Ohio St.3d 380, 763 N.E.2d 160 (2002).

19. *Id.* at 161.

20. *Id.* at 161–62.

21. *Id.* at 163.

22. *Id.* at 163.

23. *Vaccariello*, 763 N.E.2d at 163.

24. *Reid v. Spazio*, 970 A.2d 176, 179 (Del. 2009).

25. *Id.* at 178–80.

26. *Id.* at 180; 10 *Del. C.* § 8118 ("If in any action duly commenced within the time limited therefor in this chapter, the writ fails of a sufficient service or return by any unavoidable accident, or by any default or neglect of the officer to whom it is committed; or if the

*banc* that the Saving Statute preserved the plaintiff's claim, even though it was originally brought in Texas.[27] We explained that the Saving Statute reflects Delaware's "preference for deciding cases on their merits"[28] and that:

> [A]llowing a plaintiff to bring his case to a full resolution in one forum before starting the clock on his time to file in this State will discourage placeholder suits, thereby furthering judicial economy. Prosecuting separate, concurrent lawsuits in two jurisdictions is wasteful and inefficient.... [And], the prejudice to defendants is slight because in most cases, a defendant will be on notice that the plaintiff intends to press his claims.[29]

The considerations that we found important in *Reid* apply equally here. While *American Pipe* and its progeny all involved class actions and subsequent suits brought in the same jurisdiction, this factual distinction makes no legal difference. *American Pipe* considered the competing interests of class actions and statutes of limitation—efficiency and economy of litigation balanced against notice to the defendants.[30] Balancing these two interests, the Supreme Court found that the relevant statute of limitations was tolled during the pendency of the class action. That analysis is equally sound regardless of whether the original class action is brought in the same or in a different jurisdiction as the later individual action.

The Defendants contend that cross jurisdictional tolling will open the floodgates to suits brought by opportunistic plaintiffs. But the potential for litigation in Delaware exists whether or not cross-jurisdictional tolling is recognized. If we do not recognize cross-jurisdictional tolling, putative class members will still be incentivized to file placeholder actions in Delaware to protect their interests in the event that the putative class is not certified. That concern led the Montana Supreme Court to recognize cross-jurisdictional tolling in *Stevens*.[31]

We recognize that jurisdictions are split on whether to recognize cross-jurisdictional tolling.[32] While the courts' reasons for

---

writ is abated, or the action otherwise avoided or defeated by the death of any party thereto, or for any matter of form ... a new action may be commenced, for the same cause of action, at any time within one year after the abatement or other determination of the original action, or after the reversal of the judgment therein.").

27. *Reid,* 970 A.2d at 182–85.

28. *Id.* at 180.

29. *Id.* at 181–82. *See also Mergenthaler v. Asbestos Corp. of Am.,* 500 A.2d 1357, 1363 (Del.Super.1985) (allowing a court imposed stay in another jurisdiction to toll the statute of limitations in Delaware).

30. *American Pipe,* 414 U.S. at 553–56, 94 S.Ct. 756.

31. *Stevens,* 247 P.3d at 256.

32. *Compare Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1025 (9th Cir.2008) (finding that "the weight of authority and California's interest in managing its own judicial system counsel us not to import the doctrine of cross-jurisdictional tolling into California law."); *In re Copper Antitrust Litig.,* 436 F.3d 782, 793–97 (7th Cir.2006) ("the policies underlying *American Pipe* and like precedents simply do not apply in the cross-jurisdictional context."); *Wade v. Danek Med. Inc.,* 182 F.3d 281, 287 (4th Cir.1999) ("we conclude that the Virginia Supreme Court would not adopt a cross-jurisdictional equitable tolling rule."); *Casey v. Merck & Co.,* 283 Va. 411, 722 S.E.2d 842, 846 (2012) ("Virginia jurisprudence does not recognize class actions. Under Virginia law, a class representative who files a putative class action is not recognized as having standing to sue in a representative capacity on behalf of the unnamed members of the putative class.... [c]onsequently, a putative class action cannot toll the running of the statutory period...."); *Maestas v. Sofamor Danek Grp.,*

not adopting cross-jurisdictional tolling vary, the most common concern expressed is that of opening the jurisdiction to a floodgate of litigation. In *Wade v. Danek Medical, Inc.*, the Fourth Circuit declined to recognize cross jurisdictional tolling, reasoning that "if Virginia were to allow cross jurisdictional tolling, it would render the Virginia limitations period effectively dependent on the resolution of claims in other jurisdictions, with the length of the limitations period varying depending on the efficiency (or inefficiency) of courts in those jurisdictions." [33] In *Maestas v. Sofamor Danek Group, Inc.*, the Tennessee Supreme Court raised a similar concern. It wrote: "Adoption of the doctrine would run the risk that Tennessee courts would become a clearinghouse for cases that are barred in the jurisdictions in which they otherwise would have been brought." [34] Likewise, in *Portwood*, the Illinois Supreme Court wrote, "adoption of cross jurisdictional class tolling in Illinois would encourage plaintiffs from across the country to bring suit here following dismissal of their class actions in federal court. We refuse to expose the Illinois court system to such forum shopping." [35]

Delaware courts have previously rejected similar hypothetical "floodgate" arguments. In *Ison v. E.I. DuPont de Nemours & Company*, we allowed foreign nationals to bring products liability actions in Delaware, despite the defendants' concern that this would open the floodgates to foreign plaintiffs. [36] In *In re Asbestos Litigation*, the defendants explained that Delaware's "overwhelming hardship standard" for *forum non conveniens* threatened to inundate our courts in asbestos litigation. [37] The Superior Court rejected this reasoning, explaining: "Plaintiffs in tort cases are entitled to the same respect for their choice of forum as plaintiffs in corporate and commercial cases receive as a matter of course in Delaware." [38]

Inc., *33 S.W.3d 805, 809 (Tenn.2000) ("We decline to adopt the doctrine of cross-jurisdictional tolling in Tennessee.")*; Portwood v. Ford Motor Co., *183 Ill.2d 459, 233 Ill.Dec. 828, 701 N.E.2d 1102, 1104–05 (1998) (declining to adopt the doctrine of cross-jurisdictional tolling because of forum shopping concerns)*; Vaught v. Showa Denko K.K., *107 F.3d 1137, 1141–47 (5th Cir.1997) (applying Texas state law to trump the* American Pipe *tolling rule)*; Bell v. Showa Denko K.K., *899 S.W.2d 749, 758 (Tex.Ct.App.1995) (refusing to grant* American Pipe *tolling because its application conflicted with Texas law)*; Ravitch v. Pricewaterhouse, *793 A.2d 939, 942 (Pa.Super.Ct.2002) ("In Pennsylvania, an individual action filed in federal court does not toll the running of the statute of limitations as to an action in state court.")*; with Stevens, *247 P.3d at 253–57 (allowing cross-jurisdictional tolling under the reasoning of* American Pipe*)*; Vaccariello, *763 N.E.2d at 163 (same)*; Staub v. Eastman Kodak Co., *320 N.J.Super. 34, 726 A.2d 955, 967 n. 4 (Ct.App.Div.1999) ("We see no reason for tolling to depend on whether the class action is pending in state or federal court. Tolling state statutes of limita-* tions during the pendency of a putative class action in federal court would tend to promote the efficiency of both state and federal court systems because suits asserting the individual claims of the class members might be filed in either court system or in both.")*; Hyatt Corp. v. Occidental Fire & Cas. Co. of N.C., *801 S.W.2d 382, 389 (Mo.Ct.App.1990) (tolling the statute of limitations under the* American Pipe*)*; Lee v. Grand Rapids Bd. of Educ., *148 Mich.App. 364, 384 N.W.2d 165, 168 (1986) (same)*.

33. *Wade*, 182 F.3d at 288.

34. *Maestas*, 33 S.W.3d at 808.

35. *Portwood*, 233 Ill.Dec. 828, 701 N.E.2d at 1104.

36. *Ison v. E.I. DuPont de Nemours & Co.*, 729 A.2d 832, 835 (Del.1999).

37. *In re Asbestos Litig.*, 929 A.2d 373, 380–82 (Del.Super.2006).

Finally, the defendants asked this Court during the course of this appeal to reverse the Superior Court's denial of their motion to dismiss on the particular facts of this case. But that application goes beyond the bounds of the question certified and accepted by this Court, and therefore we decline to entertain it. The only question before us is: "Does Delaware recognize the concept of cross-jurisdictional tolling?" For all of the above reasons, we answer this limited inquiry in the affirmative.

### Conclusion

The certified question is answered in the affirmative.

STEELE, Chief Justice, dissenting:

I respectfully dissent from the majority opinion. I would answer the certified question in the negative: Delaware should not recognize cross-jurisdictional tolling.

Filing "placeholder" suits within the statute of limitations—suits which can easily and effortlessly be stayed pending action on class action certification—does not "defeat the purpose of a class action," and it may actually create fewer substantive costs than allowing cross-jurisdictional tolling.[39] The facts in this case demonstrate that the majority's holding promotes forum shopping at its worst. The ability to easily and effortlessly stay a filing turns the specter of prosecuting two cases at once into a straw man more like a boogeyman in a child's nightmare than a real danger to efficient case processing.

The Fourth Circuit's reasoning in *Wade v. Danek Medical, Inc.*[40] persuades me to dissent. I also agree with the Tennessee Supreme Court's discussion of cross jurisdictional tolling in *Maestas v. Sofamor Danek Group, Inc.*:

> [T]he practical effect of our adoption of cross jurisdictional tolling would be to make the commencement of the Tennessee statute of limitations contingent on the outcome of class certification as to any litigant who is part of a putative class action filed in any federal court in the United States. It would essentially grant to federal courts the power to decide when Tennessee's statute of limitations begins to run. Such an outcome is contrary to our legislature's power to adopt statutes of limitations and the exceptions to those statutes and would arguably offend the doctrines of federalism and dual sovereignty. If the sovereign state of Tennessee is to cede such power to the federal courts, we shall leave it to the legislature to do so.[41]

38. *Id.* at 382.

39. *See Portwood v. Ford Motor Co.*, 183 Ill.2d 459, 233 Ill.Dec. 828, 701 N.E.2d 1102, 1105 (1998) ("We are convinced, however, that any potential increase in filings occasioned by our decision [rejecting cross-jurisdictional tolling] today would be far exceeded by the number of new suits that would be brought in Illinois were we to adopt the generous tolling rule advocated by plaintiffs. By rejecting cross-jurisdictional tolling, we ensure that the protective filings predicted by plaintiffs will be dispersed throughout the country rather than concentrated in Illinois.... If necessary, the state suit could be stayed pending proceed-ings elsewhere."); *see also Maestas v. Sofamor Danek Grp., Inc.*, 33 S.W.3d 805, 808–09 (Tenn.2000) (citation omitted) ("We understand that our ruling may promote 'protective' filings by plaintiffs who wish to preserve their right to file suit in Tennessee while they seek class certification elsewhere.... Any risk of duplicative litigation resulting from the protective filings may be avoided by grant of a stay by the state court until the federal ruling on class certification is made.").

40. 182 F.3d 281, 287–88 (4th Cir.1999).

41. *Maestas*, 33 S.W.3d at 809 (citations omitted).

In Delaware, "the General Assembly has the power to determine a statute of limitations."[42] We do not make policy in that area, "[r]ather, we must take and apply the law as we find it, leaving any desirable changes to the General Assembly."[43] If the General Assembly wished to recognize cross jurisdictional tolling in Delaware, it could enact a statute doing so. We should not graft our own policy views onto a clear and unambiguous statute.

For the reasons stated, I respectfully dissent.

---

**42.** *Sheehan v. Oblates of St. Francis de Sales,* 15 A.3d 1247, 1259 (Del.2011) (*quoting* Randy J. Holland, The Delaware State Constitution: A Reference Guide 60 (2002)).

**43.** *Id.* (citing *In re Adoption of Swanson,* 623 A.2d 1095, 1099 (Del.1993)).